IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiffs, | 4:24CR3086 |
| vs. | |
| MICHAEL A. PARIS, | MEMORANDUM AND ORDER |
| Defendants. | |

This matter is before the Court on Defendant's Objection to Magistrate Judge's Findings and Recommendation regarding Defendant's Motion to Suppress. (Filing No. 98; Filing No. 46.) For the reasons explained below, the Objection will be overruled.

**FACTUAL BACKGROUND**

On August 31, 2024, Deputy Sheriff Taylor Castaneda ("Deputy Castaneda") was patrolling traffic while parked in the median near the intersection of Highway 34 and northeast 48th Street in Lancaster County, Nebraska. (Filing No. 96.) There, Deputy Castaneda observed a Chevrolet Cruze ("Cruze") and a pickup truck make a left-turn onto eastbound Highway 34. (Filing No. 96.) The Cruze was in front of the truck as both vehicles navigated the turn. (Filing No. 96.) After completing the turn, the truck attempted to pass the Cruze, but the Cruze changed lanes to get in front of the truck. (Filing No. 96.)

Deputy Castaneda testified at the evidentiary hearing held in this matter that he observed Defendant—who was later learned to be driving the Cruze—complete a "rapid lane change, turning in front of the truck." (Filing No. 96.) Deputy Castaneda stated that he believed Defendant and the driver of the truck were involved in a "road rage incident based off of how the vehicle—the Cruze specifically turned in front of the truck and—attempting to pass on the right-hand side." (Filing No. 96.) Deputy Castaneda said Defendant "cut off the truck at an unsafe distance." (Filing

No. 96.) Deputy Castaneda acknowledged that he could not see if either vehicle used turn signals when making lane changes due to headlights obscuring his vision. (Filing No. 96.)

Deputy Castaneda pulled out of the median and began to follow the Cruze. (Filing No. 96.) According to Deputy Castaneda, the Cruze was traveling approximately 10 miles per hour under the posted speed limit. (Filing No. 96.) Deputy Castaneda testified that after he pulled behind the Cruze, he observed what he believed to be an obstructed license plate. (Filing No. 96.) Deputy Castaneda activated his overhead lights to conduct a traffic stop. (Filing No. 96.) At the time of the stop, Deputy Castaneda's cruiser was equipped with a dash camera, and he was wearing a body-worn camera. (Filing No. 91, Exs. 1, 2.)

Upon contacting Defendant, Deputy Castaneda informed Defendant that the license plate on the Cruze was obstructed. (Filing No. 96; Ex. 2.) He also asked Defendant about the incident with the truck. (Filing No. 96; Ex. 2.) Defendant explained that the truck tried to pass him on the inside lane when Defendant already had his blinker on. (Ex. 2.) Deputy Castaneda told Defendant that the incident with the truck was what caught his attention. (Ex. 2.) Defendant told Deputy Castaneda that he did not have a valid driver's license and that it had expired. (Filing No. 96; Ex. 2.) Deputy Castaneda then asked Defendant to exit his vehicle. (Filing No. 96; Ex. 2.) Defendant was ultimately placed under arrest and his vehicle was searched, at which time law enforcement located methamphetamine and two firearms. (Filing No. 96.) Deputy Castaneda cited Defendant for having an obstructed plate and driving under suspension, but did not cite him for any other traffic infraction. (Filing No. 96.)

On October 22, 2024, Defendant was indicted for possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841 and knowingly possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A). (Filing No. 1.) Defendant subsequently filed the pending Motion to Suppress, arguing that the traffic stop was not supported by probable cause or reasonable suspicion. (Filing No. 46.) Defendant contends that a traffic violation did not occur, and Deputy Castaneda did not have a reasonable basis to conclude that Defendant violated a traffic law. (Filing No. 46.) Defendant did not challenge the legality of the search of the Cruze. (Filing No. 46.)

Following an evidentiary hearing, the Magistrate Judge issued a Findings and Recommendation (Filing No. 97), concluding there was probable cause and reasonable suspicion for the traffic stop. In so finding, the Magistrate Judge recommended that Defendant's Motion to Suppress be denied. Defendant has objected to the Magistrate Judge's Findings and Recommendation.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1), when a party objects to a proposed findings of fact and recommendation by a magistrate judge, the Court must "make a de novo determination of those portions . . . to which objection is made." *Id. See also Gonzales-Perez v. Harper*, 241 F.3d 633, 636 (8th Cir. 2001) ("When a party timely objects to a magistrate judge's report and recommendation, the district court is required to make a de novo review of the record related to the objections . . ."). The reviewing district court judge is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see* Fed. R. Crim. P. 59(b)(3). If desired, a reviewing district court judge may also "receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

When a party contests a magistrate judge's findings that resulted from an evidentiary hearing, the reviewing district court judge does not need to conduct another hearing. *See United States v. Raddatz*, 447 U.S. 667, 674 (1980) (holding that 28 U.S.C. § 636 "calls for a de novo determination, not a de novo hearing"). Instead, the district court discharges its duty by, at a minimum, listening to a tape recording or reading a transcript of the evidentiary hearing. *See United States v. Azure*, 539 F.3d 904, 910–11 (8th Cir. 2008). Here, the Court has read the transcript of the hearing, reviewed the exhibits, and read all briefing submitted by the parties. Having done so, the Court finds Defendant's Objection should be overruled.

## DISCUSSION

A traffic stop is reasonable under the Fourth Amendment "if it is supported by either probable cause or an articulable and reasonable suspicion that a traffic violation has occurred." *United States v. Washington*, 455 F.3d 824, 826 (8th Cir. 2006). Reasonable suspicion exists when the officer "is aware of particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed." *United*

3

States v. Houston, 548 F.3d 1151, 1153 (8th Cir. 2008) (quotation omitted). "Probable cause exists when a reasonable officer, confronted with the facts known to the officer at the time of the stop, could have believed that there was a fair probability that a violation of law had occurred." United States v. Andrews, 454 F.3d 919, 921 (8th Cir. 2006). "[A]ny traffic violation, regardless of its perceived severity, provides an officer with probable cause to stop the driver." United States v. Holly, 983 F.3d 361, 364 (8th Cir. 2020) (quotation omitted).

The determination of whether probable cause or reasonable suspicion existed "is not to be made with the vision of hindsight, but instead by looking to what the officer reasonably knew at the time." United States v. Hollins, 685 F.3d 703, 706 (8th Cir. 2012). "Even an officer's incomplete initial observations may give reasonable suspicion for a traffic stop." Id. "Mistakes of law or fact, if objectively reasonable, may still justify a valid stop." Id. "To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them fair leeway for enforcing the law in the community's protection." Heien v. North Carolina, 574 U.S. 54, 60–61 (2014) (quotation omitted).

Defendant argues Deputy Castaneda did not have probable cause or reasonable suspicion to stop his vehicle because he did not commit a traffic violation and there was no reasonable basis for Deputy Castaneda to conclude that he did so. Defendant argues it was the truck driver who broke the traffic laws by driving aggressively and too closely, whereas Defendant was attempting to comply with Nebraska law by moving into the right lane to allow the faster vehicle—the truck—to pass. Defendant maintains he had already activated his blinker when the truck made an abrupt lane change to the right.

For its part, the government concedes that an obstructed license plate did not give Deputy Castaneda probable cause to stop Defendant's vehicle.[1] (Filing No. 76.) Rather, the government argues there was probable cause and/reasonable suspicion for the stop because Defendant committed other traffic violations. These alleged traffic violations include careless driving, unsafe

---

[1] Through supplemental briefing, Defendant notified the Court that days before the traffic stop at issue in this case, Defendant was stopped by another officer, who informed him that he needed a rear license plate on the Cruze. Defendant had the rear license plate with him in the Cruze, so the officer mounted the plate on the vehicle. (Filing No. 72.) The government's brief in response to Defendant's supplemental brief conceded that the obstructed plate did not supply probable cause for the stop. (Filing No. 76.)

4

lane changes and impeding traffic in violation of Neb. Rev. Stat. §§ 60-6,212, 60-6,161, and 60-6,193. The government maintains these violations occurred during the "road rage" incident that Deputy Castaneda observed between Defendant and the truck driver.

Unfortunately, the camera footage from Deputy Castaneda's vehicle provides little insight into whether Defendant committed a traffic infraction. (Ex. 1.) The recording is somewhat out of focus and the images are obscured by headlights. (Ex. 1.) However, the other evidence of record supports Deputy Castaneda's testimony that he observed traffic violations, or at the very least, had an objectively reasonable basis to believe that a violation had occurred.

Deputy Castaneda testified that he observed what appeared to be a "road rage" incident between Defendant and the truck driver. Deputy Castaneda's testimony in this regard is supported by the audio on his body camera which captured him saying "[w]hat the heck was that" shortly before he pulled out of the median. (Ex. 2.) His testimony is further supported by the fact that he immediately asked Defendant about what happened with the truck and then documented his observations of the incident in his police report. (Filing No. 96; Ex. 2.) Also, Defendant does not dispute that the interaction between him and the truck driver resulted in some type of traffic violation—he just claims it was the truck driver, and not him, who committed it. However, even if Deputy Castenada was mistaken about who violated the traffic laws, the surrounding circumstances could lead an objectively reasonable officer to believe Defendant had committed a violation. This is all the law requires.

Moreover, the Eighth Circuit Court of Appeals has indicated that a somewhat less rigorous standard may sometimes apply when evaluating the existence of reasonable suspicion based on reports of erratic driving. In *United States v. Gonzalez*, 133 F.4th 819 (8th Cir. 2025), the defendant argued officers lacked reasonable suspicion to conduct an investigatory stop on his vehicle. The defendant claimed that the officers had insufficient information to conclude that his vehicle was the one described by 911 callers to have been driving erratically. The Eighth Circuit found reasonable suspicion for an investigatory traffic stop existed, citing *United States v. Wheat*, 278 F.3d 722, 723 n.8 (8th Cir. 2001), where the Eighth Circuit noted that erratic driving poses an "imminent danger" which may allow for less rigorous corroboration of tips alleging erratic driving. This case law, while not entirely on point with the facts of this case, underscores the importance of giving law enforcement fair leeway for enforcing the law to ensure community safety.

Perfection is not required. Deputy Castenada had probable cause and reasonable suspicion to conduct a traffic stop based on his observation of what he believed to be a "road rage" incident. Based on what he knew at the time, he had an objectively reasonable belief that Defendant had committed a traffic violation. Therefore, Defendant's Objection to the Magistrate Judge's Findings and Recommendation will be overruled.

Accordingly,

**IT IS ORDERED:**

1. Defendant's Objection to Magistrate Judge's Findings and Recommendation (Filing No. 98) is overruled.
2. The Findings and Recommendation (Filing No. 97) is accepted.
3. Defendant's Motion to Suppress (Filing No. 46) is denied.
4. The matter is set for a status call with Magistrate Judge Jacqueline M. DeLuca on Monday, August 11, 2025, at 9:45 a.m. The case conference instructions found at Filing No. 18 shall be used to participate in the call.

Dated this 8th day of August, 2025.

BY THE COURT:

Susan M. Bazis
United States District Judge